IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN E. WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 2:08cv362-CSC |
| ) | (WO) |
| D. T. MARSHALL, *et al.,* ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

In this 42 U.S.C. § 1983 action, John E. White ("White") asserts that Sheriff D.T. Marshall ("Marshall"), Assistant Director Wanda J. Robinson ("Robinson"), Lieutenant Annie Pearl Findley ("Findley"), and Nurse Katie Bailey ("Bailey") violated his constitutional rights during his incarceration as a pretrial detainee in the Montgomery County Detention Facility.[1]  Specifically, White asserts that Findley subjected him to cruel and unusual punishment by placing him on suicide watch in a "strip cell" without a traditional toilet, lights, or appropriate ventilation for thirty days; depriving him of basic necessities, such as clothing, bedding, soap, a toothbrush, towels, bathroom tissue, reading material, daily exercise, or a shower, for fourteen days; removing the mattress from his cell for twenty four days; providing cold sandwiches three times a day; and ordering a jail trustee to watch him in the isolation cell.  In addition, he asserts that the defendants acted with deliberate

---

[1] Richard Allen was dismissed as a defendant in this case on June 25, 2008.  (Doc. No. 24.)

indifference to his safety by failing to prevent an attack by another inmate. White also contends that Bailey and Findley acted with deliberate indifference to his health by failing to provide him medical treatment after receiving injuries from the attack and by failing to refer him to a psychiatrist for more frequent mental health counseling. White requests damages, a declaratory judgment, and injunctive relief for the alleged violations of his constitutional rights. Pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.

The defendants filed special reports and supporting evidentiary materials addressing White's claims for relief. (Doc. Nos. 30 & 32.) Pursuant to the orders entered herein, the court deems it appropriate to treat these reports as motions for summary judgment. (Doc. Nos. 7 & 20.) Thus, this case is now pending on the defendants' motions for summary judgment. Upon consideration of such motions, the evidentiary materials filed in support thereof and White's response in opposition to the motion, the court concludes that the defendants' motions for summary judgment are due to be granted.[2]

## I. STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, White is required to produce "sufficient [favorable] evidence" which would be admissible at trial

---

[2] The court could summarily grant the defendants' motions for summary judgment because the plaintiff's unsworn response and other pleadings do not comply with Fed.R.Civ.P. 56(e). Nonetheless, out of an abundance of caution, the court will address the claims raised in the plaintiff's complaint and amendment.

supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); FED. R. CIV. P. 56(e). Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Anderson v. Liberty Lobby*, 477 U.S. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990) (citing *Anderson*, *supra*). A plaintiff's conclusory allegations similarly do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Sw. Forest Indus., Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (if on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

To demonstrate a genuine issue of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the

material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine issue as to a requisite material fact); *Waddell v. Valley Forge Dental Assoc., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine issue of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, White has failed to demonstrate that there are any genuine issues of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

## II. FACTS

White has been a frequent, temporary resident of the Montgomery County Detention Facility. During each visit, he has attempted suicide by swallowing or threatening to

swallow objects such as razors, nail clippers, batteries, or large amounts of medications. (Doc. No. 32-6.)  He has also inflicted harm upon himself with paper clips and metal parts from his identification bracelet and by beating his head against the wall.  (Doc. No. 32-8, Robinson's Affid., p. 1.)

In October 2004, psychiatric personnel diagnosed White as suffering from a mood disorder and a personality disorder with antisocial features.  (Defs' Special Report, Doc. No. 32, Attach. 32-6, p. 8.)   At that time, a physician prescribed Seroquel and Paxil and recommended that the jailers implement suicide precautions. (*Id.*, p. 7.)  In 2005, a physician diagnosed White as suffering from borderline personality disorder, antisocial personality disorder, and a narcissistic disorder.  (Doc. No. 30-3, p. 9.)  His mental health prescriptions were renewed on a routine basis throughout that incarceration.

White spent most of his term of incarceration between January 2007 and June 2007 on suicide watch.  Shortly after being booked into jail on January 24, 2007, White informed jail personnel that he had swallowed a razor blade.  (Doc. No. 30-3, p. 19;  Doc No. 30-5, p. 9; Doc. No. 32-5.)  As a precautionary measure, White was sent to the hospital for an x-ray; however, a razor blade was not found by medical personnel.  (Doc. No. 30-3, p. 4.)  A counselor noted that White "endorse[d] auditory and visual hallucinations in the form of evil voices telling him to hurt himself and seeing red rats run through the jail." (Doc. No. 32-5, p. 2.)  White also reported to a nurse that demons and rats caused him to "want to kill people," that he saw spaceships, and that he had swallowed six razor blades in North Carolina.  (Doc. No. 30-3, p. 4.)

On or around February 1, 2007, White reported that he had overdosed on medication and engaged in self-mutilation. (Doc. No. 30-6, p. 13.) On February 5, 2007, medical personnel noted that White was "in lock-down due to cutting on self." (Doc. No. 32-6, p. 2.) On February 8, 2007, White was released from suicide watch status. (Doc. No. 30-3.) At some point, he was returned to suicide watch status. (*Id.*) On February 15, 2007, White was once again released from suicide watch. (*Id.*)

On March 13, 2007, White was returned to suicide watch status because he informed jail personnel that he had swallowed a razor and a battery. (Doc. No. 30-3, pp. 1, 3, 17, 58; Doc. No. 30-5, p. 7) Shortly thereafter, White was transported to Baptist South Medical Center. (Doc. No. 30-3, p. 15.) On March 16, 2007, White was treated by medical personnel after inflicting lacerations to the right side of his abdomen and attempting to puncture his carotid artery. (Doc. No. 30-3, p. 37.) During his examination, White told medical personnel that "he wanted to die so he could get out of jail" and that "once he returned to [his] cell he would then bang [his] head on [the] door until he passed out." (*Id.*, pp. 4, 37.) On March 22, 2007, he was allowed a partial removal from suicide status. (*Id.*, pp. 1, 5.)

On March 26, 2007, White submitted an inmate sick call slip, in which he requested treatment for a fungus on his feet, bumps on his neck and penis, and hemmoroids. (Doc. No. 30-3, p. 30.) On April 2, 2007, medical personnel conducted an examination and provided medication, including anti-fungal cream. (*Id.*, pp. 26, 30.) On April 13, 2007, White submitted an additional sick call request, in which he complained that his "butt [was] bleeding like crazy"; however, when medical personnel responded to his request, White

refused treatment.  (*Id.*, p. 29.)

On April 28, 2007, White told jail personnel of his intent to kill himself.  (Doc. No. 30-3, p. 7.)  After refusing medical treatment, White was placed on suicide watch.  (*Id.*)  On April 29, 2007, White swallowed a razor blade during pill call.  (Doc. No. 30-5, pp. 6, 36.)  An x-ray of White's abdomen indicated a "[m]etallic density . . . projecting over the right upper lung zone raising concern for ingested foreign body probably within the ascending colon." (Doc. No. 30-3, pp. 36, 63.)  The following day, a physician assessed that the metal object was either fingernail clippers or a fingernail file.[3]  (*Id.*, p. 28.)

On or around May 4, 2007, Findley moved White to a "strip cell" on suicide watch, where an inmate trustee, Jimmy McLain ("McLain"), was assigned to watch him.  (Pl's Comp., Doc. No. 1, p. 2.)  White was provided a paper gown to wear.  (Doc. No. 32, Savage's Affid., p. 2.)  The cell did not have a mattress, blanket, commode, wash basin, personal hygiene items, a lightbulb, ventilation, or a commode.[4]  (Pl's Comp., p. 3.)  However, the cell does have a drain or hole in the floor covered by a grate as a means for disposal of human waste.  (*Id.*)

For two weeks out of the thirty days of incarceration in the "strip cell", White was denied the opportunity to exercise or shower. (Pl's Comp., p. 3)  While on suicide watch, White received cold sandwiches three times a day.  (*Id.*, p. 4.)  While in the strip cell, White also developed a rash around his genital area.  (Id., p. 3.)

---

[3] The evidentiary materials do not indicate the outcome of this particular incident.

[4] After 24 days in the cell, White received a mattress.  (Pl's Comp., p. 3.)

When leaving the cell in handcuffs on May 25, 2007, White was attacked by the trustee. (*Id*., p. 4.) McLain punched him and grabbed his testicles. (Doc. No. 1, Pl's Comp., p. 4; Doc. No. 17, Pl's Amend., p. 4; Doc. No. 37, Pl's Response, p. 4.) As White began defending himself, jailers sprayed him in the face with mace. (Doc. No. 37, p. 4.) Sergeants Brooks and Rodgers returned White to the strip cell, where he remained for two hours. (*Id*.) White informed the sergeants that he needed medical treatment because his eyes and groin were burning and his testicles were bleeding. (*Id*., p. 5.) Another trustee told White that Nurse Bailey said that "she ain't going to do nothing" and "to tell [him] to die." (Doc. No. 1, p. 5; Doc. No. 17, p. 5.) Two days later, White submitted a "grievance or appeal of decision" form to jail officials, in which he reported the attack and the lack of medical treatment. (Doc. No. 32-4, p. 8.)

On May 31, 2007, medical personnel determined that White should remain on suicide watch status for his own protection. (Doc. No. 30-3, p. 22.) At some point in May or June 2007, Findley ordered that White wear white plastic restraints for two days. (Doc. No. 1, p. 3.) On June 7, 2007, White was released from suicide status. (Doc. No. 30-3, p. 5-7.) On June 15, 2007, White was transferred to an Alabama Department of Corrections facility. (Doc. No. 32-4, Savage's Affid., p. 1.)

### III. DISCUSSION OF CLAIMS[5]

---

[5] The pleadings indicate that the actions which form the basis of the complaint occurred during White's incarceration in the Montgomery County Detention Facility as a pretrial detainee. The Fourteenth Amendment, rather than the Eighth Amendment, provides the appropriate standard for assessing whether conditions of confinement imposed upon a pretrial detainee are violative of the Constitution. *Bell v. Wolfish*, 441 U.S. 520 (1979). However, for analytical purposes there is no meaningful difference between the

## A.  Failure to Provide Adequate Medical Treatment

To prevail on a claim concerning an alleged denial of medical treatment violative of the Constitution, an inmate must, at a minimum, show that those responsible for providing such treatment acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir.1986). Specifically, a jail's medical and correctional personnel may not subject inmates to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292; *Mandel v. Doe*, 888 F.2d 783, 787 (11th Cir.1989).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth [or Fourteenth] Amendment." *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the [Constitution] only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel,* 888 F.2d at 787-88 (mere negligence or medical malpractice "not sufficient" to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's

---

analysis required by the Fourteenth Amendment and that required by the Eighth Amendment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985).

> medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir.1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991); *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985) (mere fact that a prisoner desires a different mode of medical treatment does not amount to deliberate indifference). Thus, a medical care provider may be held liable under either the Eighth Amendment or Fourteenth Amendment only for acting with deliberate indifference to an inmate's health when the provider knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994).

**(1)    Medical Assistance**

White asserts that the Bailey and Findley acted with deliberate indifference to his health by failing to provide him adequate medical treatment for a rash and injuries he received after an attack by another inmate. Specifically, he contends that jailers left him covered in mace in the strip cell in handcuffs for at least two hours after the assault and ignored his requests for medical treatment. White also claims that another inmate told him that Bailey had informed him that she would not provide him medical treatment after the attack. In addition, White contends that, during the time he was incarcerated in the strip cell, he did not receive medical treatment for a rash on his genitals.

The defendants deny they acted with deliberate indifference to White's medical conditions and, instead, maintain that they rendered appropriate and necessary treatment to

White throughout his term of incarceration in the Montgomery County Detention Facility. The defendants also indicate that, at the time the incident occurred, they were unaware that White was attacked by another inmate and that he wished to receive medical treatment.

The undisputed medical records indicate that White submitted an inmate sick call request during the relevant time period, in which he complained of a foot fungus, a rash, and hemorrhoids, and that he received medication and ointments to treat his condition. Although White submitted an additional request concerning his hemorrhoids, he refused medical treatment when medical personnel responded to his request. It is likewise undisputed that White did not submit any written sick call requests to medical personnel after the altercation with McLain. It is therefore clear that the medical treatment provided by Bailey was neither grossly incompetent nor inadequate. Moreover, White has failed to present admissible evidentiary materials indicating that Bailey was aware of his wish to receive medical assistance or that she refused to provide treatment to White.[6] The plaintiff also presents no significantly probative evidence demonstrating that the named defendants in any way disregarded a substantial risk to his health. Consequently, White has failed to demonstrate a material issue of fact with respect to this claim that the defendants acted with deliberate indifference to his health. Summary judgment is therefore due to be granted in favor of the defendants with respect to this claim.

---

[6] The evidentiary materials indicate that another inmate told White that Bailey told him that she was not going to provide him medical treatment. Thus, White's assertion that Bailey knew of his request for treatment and refused to provide treatment is based entirely on hearsay. *See Bozeman v. Orum*, 422 F.3d 1265, 1267 n. 1 (11th Cir. 2005) (refusing to consider inadmissible hearsay). See also FED.R.EVID. 804.

**(2)    Psychiatric Treatment**

White asserts that the defendants acted with deliberate indifference to his health by failing to provide him with mental health treatment by a psychiatrist on a daily basis. Jail and medical records indicate that White was placed on suicide watch status by medical professionals, that he was examined by medical personnel and provided medication on a routine basis, and that he was screened by a mental health professional. Medical records further indicate that White was examined by a counselor during his incarceration in the Montgomery County Detention Facility.[7] Although White maintains that he should have received daily treatment from a psychiatrist, the mere fact that he desired a different mode of medical treatment does not amount to deliberate indifference. *Harris*, 941 F.2d at 1505. Consequently, the defendants' motion for summary judgment with respect to this claim is due to be granted.

**B. The Failure to Protect**

White maintains that the defendants failed to take action to prevent the attack by the inmate trustee. A jailer's deliberate indifference to a known and substantial risk of serious harm to an inmate is a constitutional violation. *See Helling v. McKinney*, 509 U.S. 25 (1993); Marsh v. Butler County, 268 F.3d 1014, 1028 (11th Cir. 2001). A jailer may be held liable under the Constitution for acting with "deliberate indifference" to an inmate's safety when

---

[7] The court notes that, as a nurse, Bailey did not have the authority to send White to a psychiatrist for more intensive treatment. In addition, there is no evidence indicating that White submitted a grievance or health request form to any of the named defendants indicating his desire to be treated by a psychiatric specialist during the relevant time period.

12

the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994).

White has failed to come forth with any evidence that Marshall, Robinson, or Findley knew or should have known that he was going to be assaulted by another inmate. Although White maintains that Findley knew he was in the strip cell and was monitored by a trustee, he does not allege specific facts indicating that jail officials were aware or should have been aware of a likelihood that he would be assaulted by McLain. Thus, White has failed to demonstrate a genuine issue of material fact indicating that the defendants acted with deliberate indifference to his safety with respect to their failure to protect him from an assault by another inmate. *See Farmer v. Brennan*, *supra*. Therefore, summary judgment is due to be granted in favor of the defendants with respect to this claim.

### C.  Placement in a Strip Cell

White asserts that the defendants violated the Eighth and Fourteenth Amendment by allowing him to remain in an isolation cell for an extended duration and subjecting him to unconstitutional conditions of confinement. The Eighth Amendment proscribes those conditions of confinement which involve the wanton and unnecessary infliction of pain. *Rhodes v. Chapman*, 452 U.S. 337 (1981). Only actions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Rhodes*, 452 U.S. at 347. When the conduct in question, such as placement in a strip cell,

involves any measure taken to prevent a security threat or restore official control, the Eighth Amendment inquiry is "'whether force was applied in a good faith effort to maintain or restore discipline or inflicted maliciously and sadistically for the very purpose of causing harm.'" *Sims v. Mashburn*, 25 F.3d 980, 984 n.9 (11th Cir. 1994) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). Prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

The defendants admit that the plaintiff was placed on suicide watch in a strip cell on several occasions during his incarceration in the Montgomery County Detention Facility. They claim that these actions were necessary for security and safety purposes, because White reported hearing voices telling him to harm himself, threatened suicide, swallowed razor blades, attempted to overdose on medication, informed jailers that he had swallowed a battery, and repeatedly banged his head on the wall. White also used his identification bracelet or paperclips, to inflict harm upon himself, specifically by puncturing his carotid artery and cutting his abdomen. It is undisputed that, each time White was removed from suicide status, he attempted suicide or inflicted harm upon himself. (Doc. No. 32-4, Savage's Affid., p. 2.) Thus, the facts amply show that Findley, as well as other jailers and medical personnel, were "justified in placing – perhaps even required to place [White] on 'suicide watch' to prevent him from harming himself." *Greer v. McCurry*, No. 02-C-4326, 2003 WL 21826549, *9 (N.D. Ill. August 5, 2003). Because White repeatedly inflicted harm upon

himself and attempted or threatened to commit suicide, this court concludes that the defendants' initial placement of White in a strip cell in an effort to preserve order and prevent him from injuring himself was justified. *See Sims*, *supra*.

White also challenges his continued confinement in the strip cell for approximately thirty days. "'Once restraints are initially justified, it becomes somewhat problematic as to how long they are necessary to meet the particular exigent circumstances.'" *Sims,* 25 F.3d at 984 (quoting *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991)). The issue "boils down to a subjective judgment relative to when [the plaintiff] had demonstrated such a period of stable behavior and a subjective judgment relative to the intervals at which that question should be reevaluated." *Id.* A correctional officer's actions in applying preventive measures should be accorded deference. *See Sims,* 25 F.3d at 984-85. It is reasonable to conclude that confinement in a strip cell "to prevent self-harm can continue as long as the threat of suicide is present." *McMahon v. Beard*, 583 F.2d 172, 175 (5th Cir. 1978) (inmate remained in a strip cell for three months).

White concedes that he "kept doing things to hurt [him]self" during his confinement in the strip cell. (Doc. No. 17, Amend. Comp., p. 3.) Jail records also indicate that White exhibited suicidal tendencies throughout his confinement in the strip cell. There was no indication that he had given up his desire to take his own life or injure himself. In fact, his first attempt was followed by numerous other attempts to cause himself harm. Furthermore, medical personnel determined that White should remain on suicide watch status and that appropriate security measures should be implemented.

15

According deference to the defendants' preventative actions, *see Sims v. Mashburn*, 25 F.3d at 984-85, this court concludes that holding White in a strip cell for several days and removing basic items from his cell was reasonable under the circumstances as their actions were necessary to preserve internal order, maintain institutional security, and protect White from inflicting further harm upon himself.  Consequently, summary judgment with respect to this claim is due to be granted in favor of the defendants.

White also asserts that the defendants violated his constitutional rights by placing him in an isolation cell with a drain or "chinese toilet".  The chinese toilet could only be flushed from outside the cell. (Doc. No. 32-4, Savage's Affid., pp. 2-3.)  The evidence presented by the defendants shows that inmates are escorted to traditional toilets when they request to defecate. (*Id.*)  In only his unsworn response, White contends that he was not escorted to a toilet when he requested to do so. (Doc. No. 37, p. 8.)  Thus, White has failed to establish a genuine issue of fact about any deprivation associated with having a chinese toilet in a strip cell.  Therefore, this case is wholly unlike *Cotney v. Bowers*, ___ F.Supp.2d ___, 2006 WL 2772775 (M.D. Ala. 2006) or *Johnson v. Franklin*, ___ F.Supp.2d ___, 2005 WL 1899361 (M.D. Ala. 2005) in which the defendants allowed the plaintiffs to remain in strip cells with chinese toilets as the only bathroom facilities.  This court therefore concludes that the defendants' motion for summary judgment is due to be granted with respect to this claim.

White also claims that Findley subjected him to cruel and unusual punishment because his hands were cuffed in plastic restraints for two days during his incarceration in the strip cell.  The use of restraints for the purpose of preventing an inmate from creating a

16

disturbance or harming himself or others does not amount to an "'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir. 1991) (quoting *Whitley v. Albers*, 475 U.S. at 320-21). However, a policy of restraining inmates for an extended period of time solely for punitive purposes is not justified. *See Williams*, *supra*. The court must give "great deference to the actions of [jail] officials in applying prohylactic or preventative measures intended to reduce the incidence of riots and other breaches of . . . discipline." *Id*., 943 F.2d at 1576.

On several occasions, White was found guilty of masturbation and placed in an exhibitionist control suit for the purpose of "deter[ring] his behavior." (Findley's Affid., p. 2.) Inmates who are found guilty of masturbation at the Montgomery County Detention Facility are placed in exhibitionist control suits, with combination waist chains which restrain an inmate's hands by his side. The restraints are used to prevent an inmate from masturbating and to deter him from continuing the behavior in the future. (Savage's Affid., p. 3.) Non-compliant inmates may be restrained for a maximum of twenty-four hours per incident. (*Id*.) Because the use of restraints was a prophylactic or preventative measure intended to reduce or deter misbehavior, this court concludes that the defendants' motion for summary judgment with respect to this contention is due to be granted.

To the extent White claims that he was subjected to cruel and unusual punishment because he was fed cold sandwiches three times a day during his confinement in the strip cell, he is not entitled to relief. "The constitution requires that prisoners be provided 'reasonably adequate food.'" *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985).

"A well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Hamm*, 774 F.2d at 1575. For example, "[t]he fact that food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Id*.

Thus, the fact that White was fed sandwiches during his confinement in the strip cell does not rise to the level of a constitutional violation; White has not shown nor even alleged that eating sandwiches three times a day deprived him of nutrition necessary to preserve health. In the absence of such a showing, White has failed to assert a sufficiently grave deprivation denying minimal civilized measures of life's necessities. The defendants are therefore entitled to summary judgment with respect to this claim.

### III.  CONCLUSION

Accordingly, it is

ORDERED the motions for summary judgment filed by the defendants be and are hereby GRANTED. (Doc. Nos. 30 & 32.)

A final separate final judgment will be entered

Done this 5th day of November, 2008.

/s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE